IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CV-33-FL

| | |
|---|---|
| EAGLE ANDRE COLLINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Eagle Andre Collins ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-27] be granted, Defendant's Motion for Judgment on the Pleadings [DE-32] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period SSI on August 29, 2011 (Tr. 126, 161), alleging disability beginning August 9, 2009 (Tr. 222). The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 126, 161.) On November 21,

2013, a hearing was held before Administrative Law Judge Juan C. Marrero ("ALJ"), who issued an unfavorable ruling on February 14, 2014. (Tr. 31, 73.) On June 16, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.     Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since August 29, 2011, the application date. (Tr. 21.)

Next, the ALJ determined Plaintiff had the following severe impairments: "history of heart cardiomyopathy (CHF), degenerative disc disease of lumbar spine, mild degenerative changes to right knee, anxiety, depression, hypertension and diabetes mellitus (non-insulin dependent)." (*Id.*) The ALJ also found that Plaintiff's left shoulder pain was a non-severe impairment. (*Id.*) However, at step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-23.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform light work "except he would have to be able to use a cane for uneven surfaces for balance thereon and the work should not have a quota requirement." (Tr. 23.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 28.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of his past relevant work as a bail bondsman. (Tr. 31.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on five grounds. Plaintiff first contends that the ALJ erred in failing to assign great weight to a treating physician's opinion. Second, Plaintiff asserts that the ALJ erred in determining Plaintiff's RFC. Thirdly, Plaintiff contends that ALJ did not properly assess Plaintiff's symptoms and credibility. Fourth, Plaintiff asserts the ALJ erred in failing to ask the vocational expert questions supported by substantial evidence. Lastly, Plaintiff contends the ALJ erred in determining Plaintiff had the residual functional capacity to perform his past relevant work as a bail bondsman.

### A. Residual Functional Capacity

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence. The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

Here, the ALJ determined Plaintiff was capable of performing light work "except he would have to be able to use a cane for uneven surfaces for balance thereon and the work should not have a quota requirement." (Tr. 23.) However, in coming to this conclusion the ALJ failed to address evidence inconsistent with his RFC determination. The ALJ addressed numerous appointments in which he opines that the physical examinations conducted by Dr. Theodore Nicholas were normal, benign, or merely regard Plaintiff's medications. (Tr. 25-31.) In those same appointments, Plaintiff was found to have an antalgic gait with a cane, a limited range of motion in his spine, abnormal posture, spinal tenderness, and positive straight leg raise tests.

Addressing an appointment in March 2011, the ALJ states, "[Plaintiff] returned to Dr. Nicholas . . . for medication refills of his Oxycodone and was also given Xanax and Flexeril."

(Tr. 25.) However, the ALJ did not address that during the appointment Dr. Nicholas noted that an x-ray was reviewed showing moderate to severe lumbar spondylosis. (Tr. 356.)

Regarding an appointment in June 2011, the ALJ merely addressed Plaintiff's medication, stating that Plaintiff "reported that his medication regimen (Oxycodone) was quite beneficial and denied any side effects. He was given Xanax for as needed basis for anxiety." (Tr. 26.) However, the ALJ did not address that Plaintiff also "may [have been] developing a tolerance to the medication." It was also noted during the physical exam that Plaintiff had "slightly flexed posture," "generalized tenderness throughout his lumbar paraspinals bilaterally," "tenderness along his lumbar spinous processes," "point tenderness at both sciatic notches," and "limited extension, lateral bending, and rotation." (Tr. 354-55.) Additionally, Plaintiff "lacked approximately 25% of full lumbar flexion," "straight leg raising tests were positive bilaterally," and "he had an antalgic gait with his cane." (Tr. 355.)

Next, the ALJ addressed an appointment in September 2011 and he again only addressed Plaintiff's medication and failed to mention the fact that Plaintiff had "tenderness along his lumbar spinous processes and at his lumbar paraspinals," "straight raising tests were positive bilaterally," and "[h]e had an antalgic gait with his cane." (Tr. 353.)

Again, regarding a December 2011 appointment, the ALJ merely discussed Plaintiff's medications without also considering that Plaintiff had "flexed posture," "generalized tenderness throughout his lumbar paraspinals bilaterally," "straight leg raising tests were positive bilaterally," and "[h]e had an antalgic gait with his cane." (Tr. 455.)

The ALJ addressed Plaintiff's next appointment, in March 2012, again only regarding Plaintiff's medications. At this appointment, Dr. Nicholas noted Plaintiff's musculoskeletal exam was "[u]nchanged from previous exam." (Tr. 453.)

6

The ALJ continued to address Plaintiff's medications without addressing physical findings consistent with Plaintiff's complaints regarding his low back pain for appointments in June 2012, September 2012, December 2012, and March 2013. (Tr. 27-28.) In June 2012, Plaintiff's physical exam revealed "lumbar paraspinal tenderness bilaterally," and "slightly flexed posture." (Tr. 451.) In September 2012, Dr. Nicholas noted that Plaintiff's range of motion in his spine was "generally reduced," "[p]atient is not able to ambulate well," "[t]he gait is antalgic and USES CANE," Plaintiff could toe and heel walk "with difficulty," a straight leg raising test was positive on the right, a sensory exam of the lower extremities was abnormal, there was moderate paraspinal muscle spasms, and moderate tenderness in the lumbar spine upon palpation. (Tr. 449.) In December 2012, Dr. Nicholas observed that Plaintiff's range of motion was reduced in the extension of his spine, "strength of lower extremities abnormal and weakness in left leg," Plaintiff had mild paraspinal muscle spasms, moderate tenderness in the lumbar spine, and decreased sensation to light touch in Plaintiff's left leg. (Tr. 443.) In March 2013, Plaintiff's physical exam revealed that Plaintiff's range of motion in his spine was generally reduced, "[p]atient not able to ambulate well," "gait is antalgic and WITH CANE," straight leg raising test was positive, weakness was noted in both of Plaintiff's legs, there were moderate paraspinal muscle spasms and moderate tenderness of the lumbar spine, and sensation to light touch was decreased in both legs. (Tr. 440-41.)

Because the ALJ failed to discuss how this evidence, which appears inconsistent with the ALJ's findings, was considered by the ALJ in making his RFC determination, the undersigned is unable to determine whether the ALJ's RFC determination is supported by substantial evidence. Therefore, the undersigned recommends that the case be remanded to the Commissioner for further proceedings.

B.  Past Relevant Work

Next, Plaintiff contends that the "ALJ further erred when he determined that [Plaintiff] had the residual functional capacity to perform past relevant work as a bail bondsman." (Pl.'s Mem. at 7.) The ALJ found "The claimant is capable of performing past relevant work as a bail bondsman, DOT no. 186.267-010 with a specific vocational performance of 6 and performed at the sedentary level." (Tr. 31.) At the hearing, Plaintiff explained that he could no longer perform the work of a bail bondsman:

> For one, the bail bonding business is very stressful. I couldn't do that. It would put too much on my heart. For another, if someone did not show up for court, I got to physically go out and capture these people and put them back in jail. I could not do that anymore.

(Tr. 100.) The ALJ then asked the Vocational Expert ("VE") how the job is normally performed. The VE responded regarding the job of a bonding agent:

> What I'm looking at is just a person – the description of this job says that they investigate the arrested person to determine bondability and interview the bond applicant to ascertain character and financial status, furnishes bond for prescribed fee upon determining intention of accused to appear in court, and posts and signs bonds with the court clerk to obtain release of the client, forfeits amount of bond if client fails to appear for trial. Now that part of the job is sedentary. What he's describing is additional duties, which would make it a light job, or even medium.

(Tr. 101.) The ALJ then asked if the job was normally performed with the "deputy/marshal" aspect. (Tr. 101.) The VE answered that it was not. (Tr. 101.)

The VE never stated that that she was testifying pursuant to the *Dictionary of Occupational Titles* ("DOT") or that her testimony was consistent with the DOT. Additionally, there was no consideration of whether Plaintiff's duties at his past relevant work were predominantly that of a bonding agent. "When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has the affirmative responsibility to ask about any possible conflict between that

8

VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

Additionally, "under the fourth step of the disability inquiry, a claimant will be found 'not disabled if he is capable of performing his past relevant work either as he performed it in the past *or* as it is generally required by employers in the national economy." *Pass v. Chater*, 65 F.3d 1200, 1207 (4th Cir. 1995). A claimant bears the burden to show "an inability to return to [his] previous work (i.e., occupation), and not simply to [his] specific prior job." *De Loatche v. Hacker*, 715 F.2d 148, 151 (4th Cir. 1983). An ALJ "may rely on the general job categories in the [DOT] as presumptively applicable to a claimant's prior work." *Id.* "The same label, however, may be used in a variety of ways." *Id.* Thus, a plaintiff "may overcome a presumption that the [Commissioner's] generalization applies by demonstrating that [his] duties were not those envisaged by the framers of the [Commissioner's] category." *Id.*

The ALJ did not elicit testimony from the VE that Plaintiff's past work as described was that of a bonding agent under the DOT, nor does the ALJ provide an explanation regarding the inconsistencies between Plaintiff's description of his job duties with those provided by the VE. According to the VE, Plaintiff's past work was performed at a light or even medium level and only an aspect of Plaintiff's past work was performed at the sedentary level. Because the ALJ found Plaintiff was capable of performing only light work, his determination that Plaintiff is capable of performing his past work as a bail bondsman without reconciling the inconsistency between Plaintiff's testimony and that of the VE constitutes reversible error. Therefore, the case should be remanded to the Commissioner for further proceedings on this issue.

### C. Remaining Challenges

Plaintiff also asserts that the ALJ erred in assessing his credibility, in determining the weight assigned to Dr. Nicholas' and Dr. Ahmed's medical opinions, and in questioning the VE. (Pl.'s Mem. at 7.) Given the undersigned's recommendation that the case be remanded for further consideration of Plaintiff's RFC and his ability to perform his past relevant work, there exists a substantial possibility that the Commissioner's findings with regard to the remaining assignments of error may be different on remand. Accordingly, the undersigned expresses no opinion as to Plaintiff's remaining assignments of error.

### CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-27] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-32] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **July 18, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 30th day of June 2016.

_____
KIMBERLY A. SWANK
United States Magistrate Judge